UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL J. ASCENZI,           :
                                   :
          Plaintiff,        :
                                   :   CIVIL NO. 3:CV-05-1184
        v.              :
                                   :   (JUDGE VANASKIE)
OFFICER O'BRIEN, ET AL.,    :
                                   :
          Defendants.    :

M E M O R A N D U M

I.    Introduction

On June 14, 2005, Michael J. Ascenzi filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth Amendment rights in connection with the issuance and execution of a search warrant of his apartment.[1]  The search resulted in his arrest for possession of a controlled substance and possession with intent to deliver a controlled substance.  Ascenzi subsequently pled guilty to the possession with intent to deliver charge, and the possession charge was nolle prossed.  The sole remaining defendant in this action is

---

[1]  Ascenzi was incarcerated at the Retreat State Correctional Institution ("SCI-Retreat"), Hunlock Creek, Pennsylvania, when he initiated this action.  Although Ascenzi was released from prison during the pendency of this action (see Dkt. Entry 92, Motion for Finger Print and Chemical Analysis), it appears that Ascenzi is once again incarcerated (see Plaintiff's Statement of Materials Facts, Dkt Entry 116).  Ascenzi is currently housed at the State Correctional Institution at Waymart, Pennsylvania.  (Id.)

Pennsylvania State Police ("PSP") Detective O'Brien.

Ascenzi attacks O'Brien's probable cause affidavit used to obtain the search warrant.  Specifically, he asserts that O'Brien fabricated key elements of the affidavit and failed to make a statement as to the reliability of his confidential informant ("CI"), whom he allegedly used to make controlled drug buys from Plaintiff.  Ascenzi alleges that the CI "used these officers to obtain their money, for his or her addiction to prevent withdrawal from heroin." (Dkt. Entry 1, Complaint at ¶ 14.)  Plaintiff alleges O'Brien's CI to be Cassie Price, the sole witness in the Commonwealth's drug case against him.  Ascenzi avers Price's prior criminal history and drug addiction made her an unreliable CI, yet O'Brien intentionally and recklessly relied upon her statements to obtain the search warrant.  Plaintiff also alleges that the search warrant was unreasonably executed, leaving the home of his elderly father in disarray.  (Id.)

Presently before the court are cross motions for summary judgment.  For the following reasons, defendant's motion for summary judgment will be granted, and plaintiff's denied.

II.   Procedural History

Defendant filed a motion for summary judgment on July 9, 2007.  (Dkt. Entry 65.) O'Brien's obligation to brief his potentially dispositive motion was stayed pending the resolution of several discovery disputes.  (Dkt. Entry 80, Order.)  The stay was lifted on January 23, 2008, (Dkt. Entry 96, Order), and on February 27, 2008, defendant filed a revised Statement of

Material Facts, supporting brief, and exhibits in support of the summary judgment motion. (See Dkt. Entries 102 and 103.) Plaintiff then sought, and was granted, additional time to file his opposition materials. (Dkt. Entry 105.) However, in lieu of a response to defendant's motion, on April 17, 2008, Ascenzi filed his own motion for summary judgment. (Dkt. Entry 106.) He simultaneously filed a supporting brief and his own declaration. (Dkt. Entries 107 and 108.) Defendant filed an opposition brief to Ascenzi's Motion for Summary Judgment on June 6, 2008. (Dkt. Entry 114.) Two weeks later, Ascenzi filed a Statement of Material Facts in support of his motion for summary judgment (Dkt. Entry 116), and an amended supporting brief (Dkt. Entry 117). Ascenzi also sought leave to file his opposition to defendant's motion for summary judgment out of time. (Dkt. Entry 118.)

On June 23, 2008, Ascenzi was granted leave to file his opposition to defendant's motion for summary judgment on or before July 11, 2008. (See Dkt. Entry 119.) At the same time defendant was granted leave to file a supplemental response in opposition to Ascenzi's recent statement of facts and amended brief filed in support of his motion for summary judgment. (Id.) Ascenzi filed his opposition to defendant's motion for summary judgment on July 7, 2008. (Dkt. Entry 120.) Defendant then filed an amended brief in opposition to Ascenzi's motion as well as an answer to his statement of undisputed facts. (Dkt. Entries 120 and 121.) On July 25, 2008, defendant filed a reply brief in response to Ascenzi's opposition to their motion for summary judgment. (Dkt. Entry 125.) Ascenzi then filed a motion seeking to

file a reply brief out of time, along with the proposed reply brief.  (See Dkt. Entries 128 and 129.)

On August 7, 2008, Ascenzi filed a Motion for Enlargement of Time to file a brief in response to O'Brien's reply brief in support of his motion for summary judgment.  (Dkt. Entry 130.)  He also filed an Answer to Defendant's Answer to his Statement of Facts and a surreply brief in support of his own motion for summary judgment.  (Dkt. Entries 132 and 133.)  On August 18, 2008, Ascenzi sought an enlargement of time to file his brief in support of his August 7, 2008, motion to file a reply brief in opposition to defendant's brief in support of his summary judgment motion.  (Dkt. Entry 134.)  More recently, Ascenzi filed an Amendment to his Unsworn Statement, (Dkt. Entry 136), and a "Response to the Defendant's Brief in Support of his Summary Judgment Motion."  (Dkt. Entry 137.)

III.    Factual Background[2]

In 2003, an unidentified PSP Trooper in the Vice/Narcotics Unit told Trooper O'Brien about a CI he had worked with in the past.  As the Trooper was leaving the unit, the Trooper referred the CI to O'Brien for additional investigations.  (Dkt. Entry 103, Defendant's Amended Statement of Material Facts ("DSMF") at ¶ 3).  Trooper O'Brien subsequently called and met with the CI.  O'Brien is aware that this CI provided reliable information in the past, and

--------

[2]  Regardless of multiple opportunities to do so, Ascenzi did not file an Answer to Defendant's Statement of Undisputed Facts.  Thus, defendant's facts are deemed admitted pursuant to M.D. Local Rule 56.1.

in particular, provided information used in a successful drug prosecution.  (Id.)

In May 2004, the informant told O'Brien that Ascenzi was trafficking heroin in the city of Nanticoke, Pennsylvania.  (Id. at ¶ 4.)  O'Brien then ran a criminal history check on Ascenzi and discovered Ascenzi had a prior conviction for selling ten pounds of marijuana.  (Id. at ¶ 5.)  On May 26, 2004, at the request of O'Brien, and while in his presence, the CI called Asenzi to order heroin.  O'Brien heard the informant's side of the telephone conversation.  (Id. at ¶ 6.)  According to the CI, Ascenzi directed the CI to meet him in a drug store parking lot to pick up the "bundle."  (Id. at ¶ 7.)  O'Brien, accompanied by the informant, drove to the parking lot, where Ascenzi arrived in a blue pick up truck.  (Id. at ¶¶ 7 - 8.)  The informant got into the truck with Ascenzi, drove around the building, and later returned to where O'Brien was waiting. The informant exited the truck and immediately gave O'Brien ten small envelopes containing a brown powdery substance, which later tested positive for heroin.  (Id. at ¶¶ 9 - 11.)  O'Brien searched the informant for drugs and money both immediately before and immediately after the informant met with Ascenzi.  The informant did not have any drugs before meeting with Ascenzi.  (Id. at ¶ 12.)[3]  The informant did not have any money after meeting with Ascenzi. (Dkt. Entry 114-2, O'Brien Supplemental Decl. at ¶ 9.)  O'Brien verified that the blue pick up truck driven by Ascenzi was registered in his name.  O'Brien was able to identify Ascenzi as the driver of the vehicle by a photograph already on file with the police.  (DSMF at ¶13.)

---

[3] Ascenzi observes that O'Brien did not conduct a strip search of the informant.

Ascenzi states he met his former girlfriend, Cassie Price, at the parking lot on May 26, 2004, but only for the purpose of loaning her $40.00 in cash.  (Dkt. Entry 107, Ascenzi Decl. at ¶ 5.)  Ascenzi believes that Ms. Price is the CI.  His belief has not been confirmed by defense counsel.

On May 28, 2004, O'Brien arranged for the CI to call Ascenzi and request another "bundle" of heroin.  Again, O'Brien was present during the phone call placed by the CI and heard only the informant's side of the conversation.  (Id. at ¶ 14; see also Dkt. Entry 102-2, O'Brien Decl., Exh. A, Incident Report of May 28, 2004, at RR. 11-12.)  According to the informant, Ascenzi directed the informant to come to his residence, which was located at the address associated with Ascenzi's truck registration and the phone number dialed by the CI. (Id. at ¶ 15; Dkt. Entry 102-2, O'Brien Decl., Exh. A, Incident Report of May 26, 2004, at R. 11 and Incident Report of May 28, 2004, at R. 14.)  O'Brien drove the CI to Ascenzi's home, gave the CI $220.00, and watched the informant walk to the back door of the residence.  A short time later, the CI emerged from the home and gave O'Brien ten small envelopes containing a brown powdery substance which later tested positive for heroin. (DSMF at ¶¶ 16 - 18).  O'Brien used the same method to search the informant immediately upon the informant leaving Ascenzi's house.  The informant did not have any drugs before entering Ascenzi's residence and returned with no cash.  (Id. at ¶ 19; Dkt. Entry 114-2, O'Brien Supplemental Decl. at ¶¶ 10 - 11.)

Ascenzi claims that Cassie Price left a message on his answering machine on

-6-

May 28, 2004, stating that she would meet him later that day to repay him the money he loaned her.  (Dkt. Entry 107, Ascenzi Decl. at ¶ 10.)  Ascenzi states he was home that day but no one came to his home that day between 3:30 p.m. and 4:00 p.m. (Id. at ¶¶ 10 - 11).  The incident report lists 1545, or 3:45 p.m., as the pertinent time.  (Dkt. Entry 102-2, O'Brien Decl., Exh. A, Incident Report of May 28, 2004, at R. 14.)  Ascenzi also challenges the veracity of the incident report insofar as it reports that the place where the transaction occurred appeared to be a "double block" residence, and Ascenzi lived in a single residence home.  Ascenzi also claims that summer foliage would obscure any view of his residence from the rear, where O'Brien states he parked while the transaction was occurring.

During the afternoon of June 24, 2004, O'Brien arranged for the CI to contact Ascenzi and order another "bundle" of heroin.  O'Brien was present when the informant placed the call and heard only the informant's side of the conversation.  O'Brien then drove the informant to 333 West Union Street, Nanticoke, Ascenzi's residence, gave the CI $220.00, and watched the informant go into the back door of the home.  (Id. at ¶¶ 20 - 23.)  The informant came out almost immediately and gave O'Brien ten small envelopes containing a powdery substance, which upon field testing, was positively identified as heroin.  Just as before, O'Brien checked the CI for drugs and money immediately before the informant entered Ascenzi's residence and immediately after the informant came out.  The informant did not have any drugs before entering the residence.  (Id. at ¶¶ 24 - 26; see also Dkt. Entry 102-2, O'Brien Decl., Exh.

-7-

A at R. 17, Incident Report of June 24, 2004.)

Ascenzi claims that on the morning of June 24, 2004, he drove to Cassie Price's home and lent her some money. Ascenzi claims he was not home the afternoon of June 24, 2004, as he was "catching some sun rays" in Wilkes-Barre. (Dkt. Entry 107, Ascenzi Decl. at ¶ 13.) Acenzi adds that he was sleeping with Cassie Price at the time. (Id.)

On July 21, 2004, O'Brien prepared an application for a search warrant for 333 West Union Street, Nanticoke, the address to which he had taken the CI to effect the controlled buys. The warrant application was verbally authorized by Assistant District Attorney Ingrid Cronin, and was subsequently signed and issued by District Magistrate Malast. (DSMF at ¶ 27.)

O'Brien's affidavit of probable cause was based on the following observations of May 28, 2004 and June 24, 2004: (1) the CI called phone number (570) 735-8468 and spoke with an individual named "Mike" each time; (2) the phone number was registered to Americo Ascenzi at 333 W. Union Street, Nanticoke; (3) the CI requested to purchase a "bundle" of heroin and was informed that the cost would be $220.00; (4) O'Brien and the CI drove to the rear of 333 West Union Street, Nanticoke City; (5) O'Brien provided the CI with $220.00 and observed the informant enter the rear left side door of the residence; (6) a few minutes later the informant was observed leaving the residence and walked immediately to O'Brien's vehicle; (7) the informant provided O'Brien with ten small envelopes containing a brown powdery

substance which later tested positive for heroin; and (8) the informant was checked for contraband and currency prior to, and after, each transaction.  (Dkt. Entry 102-2, O'Brien Decl., Exh. B at R. 49, Application for Search Warrant.)

The affidavit of probable cause was sought in anticipation of an additional drug purchase expected to take place at the Ascenzi residence on July 21, 2004.  (Id.)  Execution of the warrant was made contingent on the July 21, 2004, drug purchase actually taking place. (DSMF at ¶ 29.)

On July 21, 2004, O'Brien arranged for his CI to contact Ascenzi and order a "bundle" of heroin.  O'Brien was present when the CI placed the call to a number registered in the name of Ascenzi's father and heard the CI speak to Mike.  O'Brien heard only the informant's side of the conversation.  (Id. at ¶ 30.)  Ascenzi drove the informant to Ascenzi's home, parked, and gave the informant $220.00.  The CI entered the rear of the home and came out almost immediately and gave O'Brien ten small envelopes containing a powdery substance. (Id. at ¶ 33.)  O'Brien checked the informant immediately before, and after, the transaction took place.  The informant did not have any drugs before entering the Ascenzi residence.  (Id. at ¶ 35.)  The substance was taken to the State Police Barracks in Wyoming, Pennsylvania and field tested.  The results were positive for the presence of heroin.  (Id. at ¶ 34.)

The time of this incident listed on O'Brien's report is 2:45 p.m.  (Dkt. Entry 102-2, O'Brien Decl., Exh. A at R. 24, Incident Report of July 21, 2004.)  Ascenzi states he left his

home that day around noon and did not return until 3:00 p.m. or 3:20 p.m.  (Dkt. Entry 107, Ascenzi Decl. at ¶¶ 13 - 14.)

   At approximately 4:00 p.m. on July 21, 2004, the search warrant was executed. The search was conducted under the direction of Cpl. Gary Severns, Unit Supervisor of the Troop P Vice/Narcotics Unit.  O'Brien participated in the search, along with three other troopers and two uniformed Nanticoke Police officers.  (DSMF at ¶ 36.)  Entry into the Ascenzi residence was gained without force.  An officer's knock on the door was answered by Ascenzi.  The troopers then advised Ascenzi that they had a search warrant.  The entering officers, including O'Brien, were aware of the possible presence of Ascenzi's elderly parents and thus did not force entry so as not to excite or alarm them.  (Id. at ¶ 37.)  After Ascenzi told the troopers there were no narcotics in the home, the troopers began to search the premises.  (Id. at ¶ 38.) Cpl. Severns found 50 packets of heroin in a kitchen drawer and $1,557.00 in unmarked cash in a bedroom dresser drawer.  (Id. at ¶ 39.)  A packet of blue plastic baggies, a package of clear plastic baggies, a quantity of "ZigZag" rolling papers, a Virgin cell phone and charger, and a Verizon cell phone were also discovered during the search.  (Id. at ¶ 42.)

   Ascenzi claims that Cassie Price had come to his house on July 18, 2004, while he was taking a bath.  Ascenzi states that he told her to make herself at home, and that she placed the bags of heroin in the kitchen at that time.  (Dkt. Entry 107, Ascenzi Decl. at ¶ 15.)

   The search team conducted a thorough search of the premises.  No member of

-10-

the team destroyed any property or created any unusual disorder within the home.  (DSMF at ¶ 41.)

Ascenzi was charged with possession of a controlled substance and possession with intent to deliver a controlled substance as a result of the seizure of the 50 bags of heroin found during the search.  (Id. at ¶ 44.)  A Petition of Forfeiture of the money seized during the search was filed by a trooper other than O'Brien.  (Id. at ¶ 45.)  On April 11, 2005, Ascenzi pled guilty to the possession with intent to deliver.  The possession charge was nolle prossed.  (Id. at ¶ 46.)  Asenzi was sentenced on May 23, 2005, to serve a 24 to 48 month term of imprisonment.

Ascenzi claims that he had a conversation with Cassie Price in February 2008 during which she told him that "she made it look like [Ascenzi] was selling drugs," and that "she had to use the troopers for their money."  (Dkt. Entry 107, Ascenzi Decl. at ¶ 19.)  According to Ascenzi, Cassie Price would call Ascenzi's house and leave long messages on his answering machine, suggesting she did so "to make believe that she was actually talking to someone." (Dkt. Entry 108, Ascenzi's Brief in Support of his Motion for Summary Judgement at 4.)

IV.    Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or

nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, (1986).  An issue is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Id.  Summary judgment must

be entered in favor of the moving party "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).

   All doubts as to the existence of a genuine issue of material fact must be

resolved against the moving party, and the entire record must be examined in the light most

favorable to nonmoving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir.

2006).  The moving party has the burden of showing the absence of a genuine issue of material

fact, but the nonmoving party must present affirmative evidence from which a jury might return

a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57.   The non-moving

party "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth

specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d

228, 231-32 (3d Cir. 2001).  Allegations made without evidentiary support may be disregarded.

Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000).

V.      Discussion

      A.      Issuance of the Search Warrant

      A search warrant may be issued only if there is probable cause to believe that evidence of criminal activity will be found on the premises or person to be searched.  U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause").  To obtain a warrant, the requesting law enforcement officer must submit to a neutral and detached magistrate an affidavit containing sufficient facts and circumstances to enable an independent finding of probable cause of evidence of a crime.  United States v. Ventresca, 380 U.S. 102, 109 (1965). In determining probable cause, the magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 235 (1983).  "[T]he magistrate may give 'considerable weight' to the conclusions of experienced law enforcement officers."  United States v. Hopkins, 220 Fed. Appx. 155 (3d. Cir. 2007) (citing United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000).

      Ascenzi does not claim that O'Brien's affidavit failed to disclose probable cause to search the residence at 333 West Union Street, Nanticoke.  In other words, Ascenzi does not argue that the district magistrate erred in issuing the search warrant.  Instead, Ascenzi claims that O'Brien's affidavit was based upon deliberately false information and omitted material facts. Thus, there is no need to consider whether probable cause actually existed to support issuance

of the search warrant.  See Edwards v. Kelly, 136 Fed. Appx. 468, 472 (3d Cir. 2005).  The issue here is whether there is a genuine question of fact material to the verity of the probable cause affidavit.

In Franks v. Delaware, 438 U.S. 154 (1978), the Court held that intentionally or recklessly submitting false statements in an affidavit supporting a search warrant violates the Fourth Amendment:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 155-56.  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  Id. at 171. The Franks standard has been found to apply in civil rights actions based upon the assertion that a law enforcement officer made material misrepresentations in an affidavit of probable cause.  See Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993); Forster v. County of Santa Barbara, 896 F.2d 1146, 1148 (9th Cir. 1990).

-14-

As explained in Abdullah v. Fetrow, No. 1:05-CV-1135, 2007 WL 2844960, at *6 (M.D. Pa. Sept. 26, 2007), in the context of assessing a civil rights claim presenting a Fourth Amendment challenge to the validity of a warrant:

> An affidavit of probable cause in support of a search warrant is entitled to a "presumption of validity." To rebut this presumption, a plaintiff must prove that: (1) the affiant "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and (2) "such statements or omissions are material, or necessary, to the finding of probable cause." A false assertion is deemed recklessly made if "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." An omission is considered recklessly made if an affiant withholds a fact that "any reasonable person would have known ... was the kind of thing the judge would wish to know." False statements or omissions are deemed material to a magistrate's finding of probable cause if the affidavit is insufficient to establish probable cause once the false information has been redacted and the omitted information has been added. (Citations omitted.)

In this case, Ascenzi has not presented facts from which a jury could conclude that O'Brien deliberately or recklessly made false statements in his affidavit, or omitted material facts with the requisite culpable state of mind. The affidavit was not strictly based on information supplied by O'Brien's CI. Rather, the affidavit describes O'Brien's direct observations of the CI, who made two controlled drug buys inside a residence at 333 West Union Street, Nanticoke, Pa.

O'Brien averred that, in his presence, the CI telephonically contacted a person

-15-

who answered to the name of "Mike" on a call placed to a telephone number registered to Americo Ascenzi of 333 West Union Street, Nanticoke.   Ascenzi does not show that any of this information is false.  Relying upon statements he attributes to Cassie Price, Ascenzi suggests that she merely talked to an answering machine, and did not really speak with him.  The statements attributed to Price are, of course, hearsay, and not competent evidence on this summary judgment record.  See  Pamintuan v. Nanticoke Memorial Hospital, 192 F.3d 378, 387 n.13 (3d Cir. 1999); Houser v. Fox Theatres Management Corp., 845 F.2d 1225, 1230 (3d Cir. 1988).  More importantly, the statements attributed to Price do not call into question the truthfulness of O'Brien's observation that he listened to the informant's side of a conversation placed to a telephone number registered to a resident at 333 West Union Street, as a result of which a narcotics transaction was arranged.

The affidavit of probable cause states that the CI was transported by O'Brien to 333 West Union Street, and was observed by O'Brien entering the rear, left side door of the residence.  Ascenzi does not dispute the fact that there is a rear, left side door of his residence.  Presenting photographs, Ascenzi asserts that O'Brien could not have seen the CI enter the residence due to summer foliage, but this evidence is not such as to suggest that O'Brien lied about this observation.  Furthermore, even if the statement that O'Brien saw the CI enter the house at 333 West Union Street is omitted from the affidavit, it would not defeat probable cause to issue the search warrant.  As recognized in Skunda v. Pennsylvania State Police, 47 Fed.

-16-

Appx. 69, 72-73 (3d Cir. 2002), an assertion that a law enforcement officer could not have observed an informant enter and exit the location of a controlled drug buy is irrelevant to the existence of probable cause where, as here, the officer took the informant to a place near the residence to which the informant had been directed to effect a drug deal, and the informant returns shortly after arriving at the location with the drugs in hand and without the money supplied to make the controlled purchase.  These facts would indeed suffice to show that evidence of a crime may be located at the residence in question.  Id.

Ascenzi also claims that O'Brien's notation in an incident report that the house at 333 West Union Street appeared to be a "double block" indicates that he had the wrong address because the house at 333 West Union Street is a single family unit.  O'Brien's characterization of the house as a "double block," however, does not undermine his assertion that he took the CI to the address at which the telephone number called to arrange the transaction was registered, 333 West Union Street.

The affidavit of probable cause then states that the CI was observed exiting the residence a few minutes after entering, and immediately provided O'Brien ten small envelopes containing a brown, powdery substance that tested positive for heroin.  Ascenzi claims that he was not home at the time of the transactions recorded on the incident reports, but this assertion does not call into question the accuracy of O'Brien's observations.  What O'Brien said in his affidavit sufficed to show that illegal substances were likely to be found at 333 West Union

-17-

Street, where Michael Ascenzi resided.  The fact that O'Brien heard the CI speak with "Mike" to arrange the drug buys and was directed to come to an address at which Mike Ascenzi resided is not called into question by Ascenzi's statement that he could not have delivered the heroin to the CI because he was away from the residence at the time.

The affidavit of probable cause states that the CI "was checked for contraband and currency prior to, and after the transaction." (Dkt. Entry 102-2, Ex. B to O'Brien Declaration, at R. 52.)  Ascenzi does not show that this statement is false.  Instead, surmising that the CI is a woman, Ascenzi points out that contraband and cash could have been hidden by the CI in such a way that only a strip search would have disclosed it.  This assertion, however, has nothing to do with the truthfulness of O'Brien's statement.  All he said is that the CI "was checked," giving rise to an inference that the drugs were acquired for the cash provided by O'Brien while the CI was inside 333 West Union Street.

It may be that O'Brien could have done more to exclude the possibility that the CI was trying to deceive him.  But that is not the issue presented by Ascenzi's challenge to the validity of the search warrant that led to his prosecution on drug trafficking charges.  The issue is whether Ascenzi has presented evidence sufficient to suggest that O'Brien made material misrepresentations of fact in, or omitted material facts from, his affidavit, deliberately or with reckless disregard of the truth, and Ascenzi has simply not done so.

Ascenzi's vigorous challenge to the credibility of O'Brien's CI does not show that

-18-

the affidavit of probable cause was riddled with lies and material omissions.  O'Brien's probable

cause affidavit was not based on what his CI told O'Brien, but on his own observations.  The

fact that Ascenzi believes his former girlfriend, Cassie Price, to be O'Brien's CI is irrelevant.

Even if the CI was unreliable, the affidavit was not based upon the reliability of an informant or

the accuracy of information suppled by the informant, but on O'Brien's observations of his CI in

relation to the place to be searched.  Furthermore, "reliability is not a separate factor in a

probable cause analysis and it is not a sine qua non for probable cause." Skunda, 47 Fed

Appx. at 73.  That Ascenzi claims Price admitted to him that she "used" the state police to

obtain money for her drug habit, and then planted the drugs in his house that were seized on

July 21, 2004, does not suggest that O'Brien submitted a false or recklessly misleading

probable cause affidavit.   Nowhere in the mass of documents submitted by Ascenzi does he

suggest that O'Brien knew or should have known of the alleged CI's ruse at the time of applying

for the warrant, or at any later date.

   Ascenzi has not presented competent evidence sufficient to suggest that O'Brien

knowingly and deliberately, or with reckless disregard for the truth, made false statements or

omissions creating a falsehood in applying for the warrant to search the residence at 333 West

Union Street.  Accordingly, Ascenzi's Fourth Amendment claim lacks a sufficient evidentiary

foundation to warrant a jury trial.[4]

        B.     Execution of the Search Warrant

The method of execution of a search warrant is encompassed by the Fourth

Amendment.  United States v. Ramirez, 523 U.S. 65, 71 (1998).   "Excessive or unnecessary

destruction of property in the course of a search may violate the Fourth Amendment, even

though the entry itself is lawful and the fruits of the search are not subject to suppression."  Id.

---

[4] To the extent that Ascenzi may be claiming that O'Brien fabricated false evidence or
conspired with the CI to frame Ascenzi, thereby violating Ascenzi's constitutional rights under
the Fourth and Fourteenth Amendments, O'Brien is entitled to summary judgment under the
rule announced in Heck v. Humphrey, 512 U.S. 477 (1994).  Ascenzi maintains his innocence,
notwithstanding his guilty plea.  He essentially contends that he was framed, asserting that he
did not sell the CI heroin and that the CI planted the heroin found at 333 West Union Street.
Heck holds that "when a state prisoner seeks damages in a § 1983 suit, the district court must
consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his
conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can
demonstrate that the conviction or sentence has already been invalidated."  Id. at 486-87.
Although there may be some uncertainty as to whether Heck applies to Fourth Amendment
claims, compare Clarke v. New Jersey State Police, Civ. A. No. 03-3240, 2007 WL 4554254, at
*4-6 (D. N.J. Dec. 20, 2007) (Heck is not applicable to any Fourth Amendment false arrest
claim), with Hayhurst v. Upper Makefield Twp., Civ. A. No. 06-3114, 2007 WL 1795682, at *7-8
(E.D. Pa. June 20, 2007) (district court must conduct a "fact-based inquiry" to determine
whether success on a Fourth Amendment § 1983 claim would imply the invalidity of the
plaintiff's conviction), it is clear that a claim that a law enforcement officer fabricated evidence
to secure a conviction falls within the Heck rule.  See, e.g., Young v. Bruett, 68 Fed. Appx. 126
(9th Cir. 2003); McCleary v. Meyer, No. CIV-07-816, 2008 WL 1803775. At *6  (W.D. Okla. April
21, 2008) ("Plaintiff's allegations that he has been maliciously prosecuted with fabricated
evidence and framed for possession of controlled substances . . . necessarily imply the
invalidity of his confinement," and are thus barred by Heck); Word v. City of Detroit, No. 05-
74501, 2006 WL 1704205, at *3-4 (E.D. Mich. June 16, 2006); Brown v. Madison Police Dept.,
No.03-C-177, 2003 WL 23095753, at *5 (W.D. Wis. May 15, 2003).

While the destruction of property in carrying out a search is "not favored," reasonable destruction of property does not violate the Fourth Amendment. Dalia v. United States, 441 U.S. 238, 258 (1979) ("[o]fficers executing search warrants on occasion must damage property in order to perform their duty").

In his Complaint, Ascenzi argues that the state police "trashed" his apartment during the course of the search. (Dkt. Entry 1, Complaint at R. 11). He complains the search was "recklessly executed with no regrets towards the Plaintiff's personal property, these individuals were tossing around property while searching for contraband. It [took] my father and my aunt several days to getting (sic) the apartment situated again." (Id. at R. 12.)

O'Brien states that the search team conducted a thorough search of the premises. No member of the team destroyed any property or created any unusual disorder within the home. (DSMF at ¶ 41.) Ascenzi has submitted no direct evidence to establish that O'Brien was personally responsible for any alleged destruction of property. Furthermore, Ascenzi has failed to provide any declarations, pictures, or other evidence to counter O'Brien's declaration that the search team did not destroy any property or create any unusual disorder within the home. Based on the unchallenged record before the Court, defendant is entitled to summary judgment on this claim.

VI.    Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment will

be granted, and Plaintiff's Motion for Summary Judgment will be denied.  Furthermore,

Ascenzi's motion to file a Reply Brief in Support of his motion for summary judgment <u>nunc</u> <u>pro</u>

<u>tunc</u> will be granted as Ascenzi filed the brief on July 29, 2008.  (<u>See</u> Dkt. Entry 128.)

Ascenzi's Motions for Extension of Time to File a Reply Brief in response to O'Brien's Reply

Brief (Dkt. Entry 130 and 134) will be granted in that Ascenzi filed such a brief on September

22, 2008 (Dkt. Entry 137), and it was considered in addressing the motions.

       An appropriate Order follows.

                    s/ Thomas I. Vanaskie       
                    Thomas I. Vanaskie
                    United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL J. ASCENZI,                        :
                                           :
                    Plaintiff,             :
                                           :   CIVIL NO. 3:CV-05-1184
            v.                             :
                                           :   (JUDGE VANASKIE)
OFFICER O'BRIEN, ET AL.,                   :
                                           :
                    Defendants.            :


                            O R D E R

        NOW, this 25th day of SEPTEMBER, 2008, for the reasons set forth in the

foregoing Memorandum, IT IS HEREBY ORDERED THAT:

        1.      Defendant's Motion for Summary Judgment (Dkt.
                Entry 65) is GRANTED.

        2.      Plaintiff's Motion for Summary Judgment (Dkt. Entry
                106) is DENIED.

        3.      Plaintiff's Motion for Order (Dkt. Entry 129) is
                GRANTED.

        4.      Plaintiff's Motions for Extension of Time to File Brief
                (Dkt. Entries 130 and 134) are GRANTED.

5.     The Clerk of Court is directed to enter judgment in favor of all Defendants and to mark this matter CLOSED.


s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge